

| | | |
|---|---|---|
| **ZACHARY W. CARTER**<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY  10007 | **Ben Kuruvilla**<br>*Special Federal Litigation*<br>(212) 356-3513<br>(212) 788-9776 (fax)<br>bkuruvil@law.nyc.gov |

September 9, 2014

**Via ECF**
Hon. Roanne L. Mann
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

          Re:    <u>Tiwona Joseph v. Detective Samuel Lallave, et al.</u>,
                 13-cv-7051 (KAM)(RLM)

Dear Judge Mann:

      I am a senior counsel in the New York City Law Department, representing the defendants in this matter.  I am writing in response to plaintiff's motion to compel discovery, dated September 5, 2014.  Plaintiff moves to compel discovery  (1) on the grounds that defendants have not provided a privilege log, (2) relating to defendants' production of certain disciplinary histories, disciplinary files and performance evaluations for the defendant officers, (3) on the grounds that defendants have refused to produce certain categories of disciplinary files, (4) relating to settlement amounts for unrelated lawsuits in which the defendant officers are named as defendants and (5) relating to certain miscellaneous document requests set forth on pages 2 and 3 of plaintiff's motion.

     **1.**   **Privilege Log is Unnecessary**

      Plaintiff argues that defendants have not provided a privilege log.  A number of plaintiff's document requests and interrogatories can be construed as requesting privileged materials and, as a result, defendants asserted appropriate privilege assertions in their written responses, including the attorney-client, work product and/or official information privileges. <u>See</u>, <u>e.g</u>, Exhibit B to Plaintiff's Motion, Defendants' Reponses to Interrogatories Nos. 4, 6 and Document Requests Nos. 2 and 10.  Nevertheless, defendants have not withheld a single document based on the assertion of any privilege.

      Defendants redacted information in Detective Lallave's memo book and from the 77th precinct command log because this information relates to arrests of other individuals and/or

Honorable Judge Roanne L. Mann
Tiwona Joseph v. Detective Samuel Lallave, et al.
September 10, 2014
Page 2

matters that are unrelated and not relevant or likely to lead to the discovery of admissible evidence in plaintiff's case. Furthermore, the redacted material includes information which may be sealed due to the provisions of N.Y.C.P.L. §160.50. No other redactions were made and no documents were withheld on privilege grounds. Therefore, no privilege log is required.

**2. Disciplinary Histories, Underlying Files and Performance Evaluations Are Being Produced**

With respect to the disciplinary histories for the defendant officers, on Wednesday, September 10, 2014, defendants will produce the Civilian Complaint Review Board ("CCRB") histories and CPIs for defendants Lallave, Sinclair and Maloney. Defendants will also produce the performance evaluations for defendants Lallave, Sinclair and Maloney on September 10. Defendants will also produce the Internal Affairs Review Board ("IAB") resume for defendant Lallave on September 10. Accordingly, the sections of plaintiff's motion requesting these items is moot.[1] Although defendants requested the IAB resumes for defendants Sinclair and Maloney in early July 2014, they have not been received yet. Defendants will produce these resumes as soon as they are received, which is expected to be in the next two weeks.

With respect to underlying disciplinary files, defendants have already agreed to produce, consistent with prior practice, any such documents involving allegations, substantiated or unsubstantiated, that are similar in nature to the allegations in the complaint or otherwise relate to the making of false statements, made within the past ten years before the incident in this case.[2] Defendants expect to provide CCRB files that fall under the above criteria for defendants Lallave, Sinclair and Maloney by plaintiff's requested date of September 19. The IAB files will require additional time and will likely be produced by the first week in October although they will be produced on a rolling basis as they come in.

---

[1] Moreover, plaintiff's motion states that defendants did not indicate, when counsel spoke on September 5, 2014, that production of documents was imminent. However, plaintiff's counsel did not ask about the status of the production of these disciplinary histories and files. Had counsel asked about these materials at that time, the undersigned would have indicated that they would be produced forthwith.

[2] It should be noted that, upon information and belief, defendants Lallave, Sinclair and Maloney have no substantiated CCRB or IAB charges against them in the ten years prior to the incident.

Honorable Judge Roanne L. Mann
Tiwona Joseph v. Detective Samuel Lallave, et al.
September 10, 2014
Page 3

### 3. Plaintiff Not Entitled to Open Files and Not Entitled to Files with Allegations that are Unrelated to the Allegations in this Case

a. Open Files Are Subject to the Deliberative Process Privilege

Plaintiff argues that she is also entitled to disciplinary files that are open and post-date the incident underlying the lawsuit. As defendants have already explained to plaintiff's counsel, between defendants Lallave, Sinclair and Maloney, there is a total of one (1) relevant file that actually falls under the category of "open and/or post-dating the incident". Specifically, this is an open and pending CCRB with an incident date of February 12, 2014, that relates to defendant Sinclair.

With respect to this file, since it is still open, pending and being investigated before the CCRB, the information contained within the file is protected from disclosure by the deliberative process privilege. The purpose of the deliberative process privilege "is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the [g]overnment." *NAACP Legal Def. & Educ. Fund. Inc. v. United States HUD*, 07 Civ. 3378 (GEL), 2007 U.S. Dist. LEXIS 88027, at *31 (S.D.N.Y. Nov. 30, 2007)(quoting *Dep't of Interior v. Kiamath Water Users Protective Ass'n,* 532 U.S. 1, 8-9 (2001)(internal citations omitted)); see also *Hopkins v. United States Dep't of Housing & Urban Dcv.*, 929 F.2d 81, 84 (2d Cir. 1991). The privilege is based on the 'obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news...." *Tigue v. United States Department of Justice,* 312 F.3d 70, 76 (2d Cir. 2002). As one Court noted, "[t]he rationale underlying the privilege is that 'those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision making process." *City of New York v. Group Health, Inc*., 06 Civ. 13122 (RJS)(RLE), 2008 U.S. Dist. LEXIS 82681, at *4 (S.D.N.Y. Oct. 10, 2008)(citations omitted).

In order to qualify as privileged, the advisory' opinions, recommendations or deliberations must be (1) pre-decisional and (2) deliberative. *Hopkins, 929 F.2d at 84*. First, information is pre-decisional "when it is prepared in order to assist an agency decision maker in arriving at his decision." *Tigue, 312 F.3d at 80* (citation omitted). Pre-decisional material or information normally includes "recommendations, draft documents, proposals, suggestions and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Second, information is "deliberative" when it is "actually related to the process by which policies are formulated." *Hopkins, 929 F.2d at 84*. Courts in this district have held that the observations and questions" of agency staff are "precisely the type of candid discussion that the deliberative process privilege is designed to shield." *Abraham Fruchter & Twersky LLP v. U.S.* SEC, No. 05 Civ. 00039, 2006 U.S. Dist. LEXIS 13607, at *3 (S.D.N.Y. Mar. 29, 2006).

Honorable Judge Roanne L. Mann
Tiwona Joseph v. Detective Samuel Lallave, et al.
September 10, 2014
Page 4

Documents that reflect facts on which the agency relied are also protected by the privilege, where those facts cannot be segregated from the opinions expressed in the document. As the Second Circuit has recognized:

> Disclosure of "purely factual material" in otherwise exempt documents may be ordered only if the material "is severable without compromising the private remainder of the documents"
>
> . . . . More is required than merely plucking factual segments from the reports [and] there must be a sensitive reference to the relation of the factual segments to the report as a whole.

*Lead Industries Association v. Occupational Safety & Health Administration*, 610 F.2d 70, 85 (2d Cir. 1979) (quoting *Environmental Protection Agency v. Mink*, 410 U.S. 73, 91 (1973)).[3] An agency's review and selection of some facts over others is privileged, because such review and selection are deliberative in nature. *Jowett, Inc. v. Dept. of the Navy*, 729 F. Supp. 871, 877 (D.D.C. 1989) ("Th[e] sifting of the facts and determining which facts are significant, giving frank opinions and recommendations based on those facts . . . constitute precisely the kind of 'process' that the deliberative process privilege . . . is designed to protect") (applying FOIA).

Here, since the subject file is still under investigation by CCRB, the deliberative process privilege applies. Further, as noted, only one (1) file comes under the category of relevant files that post-date the incident or are open. Therefore, this request does not implicate a large number of files.

b. Plaintiff is Not Entitled to Unrelated Allegations

Plaintiff also argues that her claims of false arrest and deliberate indifference to medical needs in this case entitle her to police officer disciplinary files involving allegations that go beyond the scope of deliberate indifference and false arrest related allegations. Specifically, plaintiff seeks files involving allegations of excessive use of force, failure to make memo book entries and missing or losing property.

First, as the Court is aware, plaintiff's allegations in this case are that during her arrest, plaintiff requested a special accommodation that she be handcuffed in the front as opposed to behind the back and that she be seat-belted in the prisoner van. See Plaintiff's Amended Complaint at Docket No. 10, §17. Plaintiff alleges that she made these requests and the officers refused, resulting in an exacerbation of a pre-existing back injury. Id. at §17-18. Plaintiff's complaint does not allege that any officer used deliberate, wanton or excessive force on her. Accordingly, files related to allegations of excessive use of force are irrelevant to the allegations being made by plaintiff in this lawsuit. Further, plaintiff does not explain in her motion how

---

[3] *Lead Industries* involved application of Exemption 5 to the Freedom of Information Act ("FOIA"), which incorporates the deliberative process privilege.

Honorable Judge Roanne L. Mann
Tiwona Joseph v. Detective Samuel Lallave, et al.
September 10, 2014
Page 5

allegations regarding an officer's failure to make a memo book entry in another matter or how losing property in another case relates to any allegation made in this lawsuit. To the extent plaintiff is seeking files related to officers *falsifying* memo book entries and/or *stealing* property from prisoners, defendants concede that they would need to produce such files on the grounds that they may relate to the subject officers' credibility. However, upon information and belief, no such files exist for any of the defendant officers. Accordingly, plaintiff's request that defendants produce files involving allegations that are not similar or relevant to the claims in this lawsuit should be denied. Otherwise, defendants would face an undue burden of having to gather and produce files that have no relevance to the allegations made in this lawsuit.

### 4. Settlement Amounts Are Irrelevant

Plaintiff moves to compel defendants to provide responses to plaintiff's interrogatory requesting information about the defendant officers' prior lawsuits. However, defendants have already fully identified, upon information and belief, all the lawsuits in which the defendant officers have been named as defendants. See Exhibit B to Plaintiff's Motion at Interrogatory No. 6. Specifically, defendants have provided the case caption, civil action number and the court in which the particular case was, or is, pending. Plaintiff argues that this information is not sufficient and demands specific information regarding each of these lawsuits, including the actual amounts of any settlement reached in each suit. As an initial matter, this request is unduly burdensome insofar as it seeks the settlement amounts paid by the City, where the City is not a named defendant in this lawsuit, since the City is involved in numerous settlements in civil rights cases in federal and state courts as well as administrative agencies. Furthermore, plaintiff's request is vague and ambiguous insofar as it is not clear whether plaintiff seeks settlement amounts paid by the individual defendants, or settlement amounts in cases in which the individual defendants may have been named as a defendant, or something else.

In any event, plaintiff has wholly failed to meet her burden to show that the size of a settlement of unrelated lawsuits are relevant to the claims in this case. See 287 Franklin Ave. Residents' Assoc., et al., v. Meisels, et al., 11-CV-976 (KAM)(JO), 2012 U.S. Dist. LEXIS 72855, at *12 (E.D.N.Y. May 24, 2012) ("in a motion to compel, it is incumbent upon the moving party to provide the necessary connection between the discovery sought and the claims or defenses asserted in the case."). Here, plaintiff alleges that the individual defendants failed to make a special accommodation for her by not front hand-cuffing her and by not seat-belting her in the police van. See Amended Complaint at ¶ 17. See Meisels at *15, citing Unger v. Cohen, 125 F.R.D. 67, 71 (S.D.N.Y. 1989) ("[t]he locus of the line between discovery reasonably calculated to lead to admissible evidence and the proverbial fishing expedition is determined in large measure by the allegations of the pleading.").

Plaintiff offers no reason why the settlement amounts are relevant to her claims. The settlement size of an unrelated case says nothing about that particular individual defendants' role in that case, and certainly does not make it more or less likely that the individual defendants here unlawfully stopped, falsely arrested or were deliberate to plaintiff's medical needs as alleged.

Honorable Judge Roanne L. Mann
Tiwona Joseph v. Detective Samuel Lallave, et al.
September 10, 2014
Page 6

Rather, the settlement size more than likely reflects the relative skills of the respective counsel as negotiators, the number of plaintiffs, the court's recommendations, the proclivities of the trial judge, the stage and costs of anticipated discovery, the length of any deprivation, the nature and extent of physical injuries, costs of experts, credibility or sympathy determinations and so on.

To the extent plaintiff claims that settlement amounts are discoverable to show motive, intent, or absence of mistake or accident pursuant to Fed. R. Evid. 404(b)(2), this argument fails. Settlement agreements are a poor indicator of motive or intent, however, because they involve parties other than defendants, including the plaintiff, co-defendants, attorneys, and the Court. The actual amount of the settlement may have little to do with a defendants' involvement in the matter. For example, officers are often named as defendants even if they are not at the scene of an incident if their names are on a police document, or if they are on the same squad as the arresting officer. Moreover, the City's standard settlement stipulation provides for dismissal of an action "without admitting any fault or liability." As such, there is a dubious connection between the amount of a settlement and a "motive, intent, or absence of mistake or accident" attributable to the named defendants.

**5. Miscellaneous Document Requests**

Finally, plaintiff lists certain documents that she is seeking to compel on pages 2 and 3 of her motion. Defendant does not object to producing most of the documents requested here and has already indicated as much to plaintiff's counsel. These documents include the following:

- Prisoner Movement Slip – Previously Produced by Defendants

- Memo Books - Defendants have already produced defendant Lallave's memo book and expect to produce the other defendants' memo books by September 19.

- TAC Plan – Will Produce on September 10

- Roll Call – Will Produce on September 10

- Sprint Report – Defendants have requested the sprint report and expect to produce it by October 1, or earlier.

Defendants have no objections to producing any of the following documents and they will be produced to the extent they exist:

- Omniform Complaint
- Draft "scratch" copies of Arrest and Complaint Report
- Second Page of DAT investigation form
- Precinct Prisoner Roster

6

In fact, the only documents on plaintiff's list that defendants object to producing are (1) plaintiff's request for color photographs of the officers and (2) the request for the District Attorney and Criminal Court Files for plaintiff's criminal co-defendants.

Photographs

As for the photographs, it is unclear why plaintiff needs color photographs of the three named defendant officers in this case. They have already been identified and named as defendants in this matter, and therefore production of their photographs serve no useful purpose.

Additionally, plaintiff's discovery request assumes that the City routinely generates "recent" photographs of its officers, which is not the case. The requested data would have to be compiled from multiple sources. "It is well established that under Rule 34 of the Federal Rules of Civil Procedure a party cannot be compelled to create a document which does not exist . . ." Pollack v. Bell, 07 CV 637 (TJM)(DEP), 2008 U.S. Dist. LEXIS 49207 at *5 (N.D.N.Y. June 26, 2008). Finally, production of the officers' photographs implicates the Law Enforcement privilege and raises concerns that the officers' photographs may be posted on the internet or use in way which infringe their privacy rights and endanger their physical safety.

For these reasons, this Court should deny plaintiff's request for production of recent photographs of defendant officers. Should this Court grant plaintiff's request, defendants respectfully request that the Court (a) issue a schedule requiring plaintiff to provide a through physical description of each officer allegedly involved in plaintiff's allegations prior to or concurrent to defendant's production of photographs, (b) require plaintiff to amend her complaint to specify allegations of misconduct as to all three named defendants and any John and Jane Doe defendants in keeping with counsel's Rule 8 and Rule 11 obligations, (c) order these photographs be produced pursuant to the Protective Order in place in this matter and (d) in order to protect the officers' privacy interests, order that these photographs be made available to plaintiff for his viewing at the Office of Corporation Counsel, for the purpose of identifying the officers involved in plaintiff's arrest.

DA and Criminal Court Files for Co-Defendants

As for district attorney and criminal court files of plaintiff's criminal co-defendants, upon information and belief, it is our understanding that the documents have been sealed. In that event, we will require releases from these individuals to unseal and obtain these documents. Moreover, these documents are equally available to plaintiff as well and, if plaintiff does indeed wish to review these documents, she should request them.

Finally, plaintiff requests a property inspection for certain vouchered evidence. Plaintiff has not previously followed up on this request to arrange for a specific time to review the requested evidence. Defendants have no objection to arranging for an inspection of the

Honorable Judge Roanne L. Mann
Tiwona Joseph v. Detective Samuel Lallave, et al.
September 10, 2014
Page 8

requested property if it still exists. Defendants will contact plaintiff to make the appropriate arrangements regarding the logistics for this inspection.

### Discovery Extension Request

As noted in plaintiff's motion, the parties jointly request a sixty day extension of the fact and expert discovery deadlines in this matter. The request is necessary, in part, due to delays in the discovery production by both parties. Plaintiff has had difficulty obtaining all of plaintiff's relevant medical records. The records are clearly relevant and significant in assessing the merit of plaintiff's alleged injuries. A full production of these records is necessary and has not been completed to date. Defendants have also experienced delays in obtaining all the documents requested as well. In addition, the parties also had extensive settlement discussions before, during and since the settlement conference on August 8, 2014, which also interrupted the progress of discovery at times. For all these reasons, a joint request for a sixty day extension of fact and expert discovery is requested.

Respectfully submitted,

*/s/ Ben Kuruvilla*

Ben Kuruvilla

cc:   Baree N. Fett, Esq. (ECF)
      *Attorneys for Plaintiff*